UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAYMIE GUERRA,

*Plaintiff,*                                Case No.: 8:26-cv-01857

*v.*

                                           **JURY TRIAL DEMANDED**

CLARITY SERVICES, INC.,

*Defendant.*

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Jaymie Guerra ("Mr. Guerra"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, Clarity Services, Inc. ("Clarity" or "Defendant"), stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action for damages brought by Mr. Guerra against the Defendant for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

## JURISDICTION AND VENUE

2.      This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which provides that an action to enforce any liability created under the FCRA may be brought in any appropriate United States district court without regard to the amount in controversy.

3. This Court has personal jurisdiction over the Defendant because the Defendant regularly conducts business in the State of Florida and within this District, and because the acts giving rise to this action occurred within this District.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Mr. Guerra's claims occurred in this District, where Mr. Guerra resides and received his consumer report disclosures at issue.

## PARTIES

### Mr. Guerra

5. Mr. Guerra is a natural person residing in Tampa, Hillsborough County, Florida.

6. Mr. Guerra is a Consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7. Clarity is a Delaware corporation, with a principal business address at 475 Anton Boulevard, Costa Mesa, CA 92626.

8. Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

9.     Clarity is a Consumer Reporting Agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Clarity Mixes Mr. Guerra's Credit File With That of an Unrelated Person

10.    Around October 18, 2022, Clarity began maintaining a credit file on Mr. Guerra.

11.    At some point after it began maintaining a file on Mr. Guerra, Clarity started incorporating credit information belonging to a separate, unrelated consumer into his file.

12.    Clarity falsely associated information apparently belonging to an unrelated individual named "Taryn Lowery" into Mr. Guerra's credit file.

13.    "Taryn Lowery" bears a surname entirely different from Mr. Guerra.

14.    "Taryn Lowery" is associated with a different Social Security number, date of birth, address, and an Alabama driver's license.

15.    Clarity's file on Mr. Guerra is an example of a mixed file.

16.    A mixed file is a credit file that contains information concerning two or more persons rather than the one person about whom it should relate.

17.    Clarity caters its consumer reports to subprime lenders, many of whom utilize the personal identifying information maintained by Clarity to verify the identity of credit applicants. Clarity also incorporates data such as bank accounts and employment information into risk scores that it often provides to certain end-users upon request.

18.    Thus, Clarity's inclusion of credit information and personally identifying information belonging to another consumer has a severe, negative effect on Mr. Guerra's ability to obtain credit, and exposes his confidential information to third parties who never requested a report on him.

19.    Clarity has been sued for similar conduct in the past and thus knows that its automated systems often erroneously match tradeline and identifying information to an incorrect consumer's credit file based on minimal commonalities.

20.    Despite such knowledge, Clarity has declined to correct its systems.

21.    Among the identifiers Clarity merged into Mr. Guerra's file is an Alabama driver's license.

22.    Clarity's own disclosure links that license, through a shared inquiry

tracking number, to "Taryn Lowery" rather than to Mr. Guerra – confirming it is the unrelated individual's identifier, not his own.

23.     Clarity nonetheless incorporated it into Mr. Guerra's credit file.

24.     Clarity likewise merged banking information belonging to "Taryn Lowery" into Mr. Guerra's file, reporting a checking account at Coastal One Finance ending in 2101, together with its full bank routing number.

25.     Clarity's own disclosure ties that account, through the same shared inquiry tracking number, to "Taryn Lowery," rather than to Mr. Guerra.

26.     Mr. Guerra has no account or other relationship with Coastal One Finance.

27.     Clarity further reported, among Mr. Guerra's residential addresses, an Alabama address that its own disclosure ties, through the same shared inquiry tracking number, to "Taryn Lowery," rather than to Mr. Guerra.

28.     Mr. Guerra is a Florida resident and has never resided in Alabama.

29.     Clarity also reported "Taryn Lowery" – the very name of the unrelated individual whose data it merged into Mr. Guerra's file – as one of Mr. Guerra's employers.

30.     Mr. Guerra has never been employed by anyone of that name.

31.     Clarity has sold as many as 123 consumer reports regarding Mr. Guerra since incorporating Taryn Lowery's information into his file.

32.    Of these 123 reports, at least 10 were sold directly by Clarity to the end user, with 113 reports sold through Experian, Clarity's parent company.

33.    Clarity incorporated data belonging to Taryn Lowery into each of these reports on Mr. Guerra, rendering them false.

34.    Any reasonable procedure to assure accuracy would have identified different names, states of residence, driver's licenses, etc., and removed Taryn Lowery's information from the report.

### Clarity Sells Mr. Guerra's Report Without Permissible Purpose

35.    Clarity, a CRA, has a legal obligation to furnish consumer reports only to those with a permissible purpose to obtain them. 15 U.S.C. § 1681b.

36.    Despite that obligation, Clarity sold a consumer report regarding Mr. Guerra – on at least two separate occasions – in response to credit applications submitted under the name of "Taryn Lowery."

37.    On December 9, 2024, Clarity sold a consumer report regarding Mr. Guerra to CNU Online Holdings in response to a credit application submitted in the name of "Taryn Lowery."

38.    The application submitted to CNU Online Holdings contained a different Social Security number, date of birth, address, and other identifying information not belonging to Mr. Guerra.

39.     Mr. Guerra's Clarity credit file disclosure confirms the sale through a common tracking number associating the "Taryn Lowery" application with the report Clarity furnished on Mr. Guerra.

40.     Clarity did the same again on December 9, 2024, selling a report regarding Mr. Guerra to Green Arrow Solutions in response to a separate application in the name of "Taryn Lowery."

41.     Clarity had no reason to believe it had a permissible purpose to furnish a report on Mr. Guerra to these lenders, which had requested a report concerning an unrelated individual, not Mr. Guerra.

42.     There are no meaningful commonalities between Mr. Guerra and "Taryn Lowery" that could have justified Clarity's decision to treat a request for one as a request for the other.

43.     Despite lacking a permissible purpose to sell a consumer report on Mr. Guerra, Clarity disclosed Mr. Guerra's confidential, legally protected information to entities that never requested it.

**Additional Inaccuracies in Clarity's Reporting Regarding Mr. Guerra**

44.     Clarity, a CRA that predominantly serves the needs of online lenders making short-term loans, programs its systems to acquire and report as much information as possible, with little regard to the quality or accuracy of the data.

45. Clarity frequently misreported Mr. Guerra's length of residential history, often contradicting itself in its own reporting, as the following examples illustrate.

46. Most strikingly, on December 9, 2024 at 2:10:40 PM, Clarity incorporated data reporting Mr. Guerra resided at his address for 35 Months. Just 10 seconds later at 2:10:50 PM, Clarity incorporated data reporting Mr. Guerra had resided at his address for 240 Months.

47. Thus, Clarity's report indicates Mr. Guerra gained 17 years of residential history in just 10 seconds, which is impossible.

48. The overlapping and contradictory residential timelines reported by Clarity create a facially inaccurate and frankly nonsensical residential history that violates the mandate of 15 U.S.C. § 1681e(b) and creates the negative and false impression that Mr. Guerra has been unhoused, moves residences frequently, or resides at multiple residences simultaneously.

49. The same defect infects Clarity's employment-tenure reporting.

50. On December 9, 2024 at 2:10:50 PM, Clarity reported Mr. Guerra had been with his employer for 72 Months. Just 2 minutes later at 2:13:12 PM, Clarity reported Mr. Guerra had been with his employer for 36 Months.

51. It is impossible for a consumer to lose 3 years of employment history in 2 minutes on a single day.

52. The multiple timeline impossibilities Clarity incorporated into Mr. Guerra's credit file with respect to his employment tenure create a misleading and unreliable record of Mr. Guerra's employment stability.

53. Clarity's reporting of Mr. Guerra's employer's name includes facially corrupted entries.

54. Within the Employer Name section of Mr. Guerra's report, Clarity incorporated the following variants as if each represented a distinct employer: "CHOICE BUSINESS SERV," "CHOICE BUSINESS SERVICES" and "CHOICE BUSINESS SERVICES I."

55. At least one of these entries is plainly not the name of any real business – it is the product of a data-handling failure that scrambled the text between the first and last words.

56. No reasonable procedure designed to assure maximum possible accuracy of consumer reports would have allowed such facially garbled employer names to be incorporated into Mr. Guerra's credit file and sold to creditors.

57. Clarity's reporting of Mr. Guerra's pay frequency is also internally inconsistent.

58.    Clarity's file lists two different pay frequencies for Mr. Guerra – "BIWEEKLY" and "MONTHLY" – despite listing only one employer during this timeframe.

59.    These pay schedules are mutually exclusive. A person paid weekly is not also paid monthly, and a person paid biweekly (every two weeks) is not also paid semimonthly (twice per month on fixed dates).

60.    Clarity's incorporation of contradictory pay-frequency data reflects an absence of data-quality controls and a failure to implement reasonable procedures to assure maximum possible accuracy of its consumer reports.

61.    Clarity's phone data is internally inconsistent in further impossible ways. The numbers "334-XXX-XX64" and "813-XXX-XX37" each appear simultaneously in Mr. Guerra's Clarity file as his cell phone, his home phone, AND his work phone – an impossibility for any normal consumer, whose work phone is by definition a number belonging to his employer rather than to Mr. Guerra personally.[1]

62.    Clarity's consumer disclosure also contains an "Email Information" section, which the agency uses to associate online identifiers with Mr. Guerra's credit file. That section reports two email addresses ("J…@GMAIL.CLM" and "T…@GMAIL.COM"; local part redacted by counsel).

---

[1] The "XXX" have been added to the Complaint for privacy. Mr. Guerra's full phone numbers are maintained by Clarity.

63. Online identifiers of this kind function as identity keys: the subprime lenders to whom Clarity sells consumer reports, and Clarity's own record-matching logic, use them to associate a furnished record with a particular consumer. An identifier that does not belong to the consumer is therefore not a harmless cosmetic entry – it is a vector for mismatching Mr. Guerra's file with data that is not his own.

64. To the extent any identifier set out above does not belong to Mr. Guerra, its inclusion in his consumer report is an inaccuracy that reasonable procedures designed to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) would have prevented.

65. A prime example of Clarity's disregard for accuracy is its current reporting of two different dates of birth for Mr. Guerra, each containing a different month, day, and year.

66. A consumer can only have one date of birth; the additional date Clarity has on file is necessarily false and inaccurate.

67. The harm to Mr. Guerra from this reporting is severe. Date of birth is a core identity field, and Clarity's own proprietary credit scoring system – along with the underwriting models of the subprime lenders to whom Clarity sells consumer reports – treats inconsistencies in identity data as a primary red flag for fraud and identity theft.

68.    A consumer file showing two different dates of birth is, by design, scored as a high-risk applicant whose identity cannot be reliably established.

69.    The majority of lenders to whom Clarity sells reports thoroughly examine a consumer's employment history and income data to verify the consumer has a history of reliable employment and stable income.

70.    Lenders to whom Clarity sells reports also rely on the identifying information in those reports – such as the consumer's name, date of birth, and address – both to confirm that the report describes the applicant and to assess the risk that an application is fraudulent or that the file has been mismatched to the wrong person. Clarity markets risk scores and fraud-detection products to those lenders.

71.    A file carrying inconsistent or facially improbable identifying information tends to present the consumer as a higher fraud or identity risk and impairs the lender's ability to verify the consumer's identity during underwriting.

72.    Consequently, Clarity's inclusion of demonstrably false information about Mr. Guerra's consumer identity, date of birth, employer address, months at address, months at employer, net monthly income, pay frequency, and phone-number information had a significant negative impact on Mr. Guerra's ability to obtain new credit with favorable terms.

73.     Clarity has sold 133 reports on Mr. Guerra over the last two years.

74.     Each of these reports sold by Clarity contained false information about Mr. Guerra's consumer identity, date of birth, employer address, months at address, months at employer, net monthly income, pay frequency, and phone-number information and more.

75.     As a result of Clarity's reporting, Mr. Guerra was denied credit and offered credit only on substantially less favorable terms.

76.     Clarity was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Mr. Guerra.

77.     Clarity's inclusion of facially-inconsistent and obviously-false data demonstrates that its procedures are unreasonable and in violation of § 1681e(b) of the FCRA.

### Clarity's Lack of Standards Constitute Willful Violations of the FCRA

78.     Clarity operates in stark contrast to its parent company, Experian.

79.     While Experian enforces Metro 2 guidelines – industry standards which contain hundreds of pages of explanation on how to report information, covering almost any conceivable scenario, and which is used by other large CRAs and serves as a lingua franca – Clarity requires no such compliance with Metro 2 guidelines and has no discernible quality-assurance standards.

80.     In place of an industry-standard data-quality framework, Clarity's

operative "standard" is to ingest and republish whatever data its furnishers transmit, without applying even rudimentary validity checks.

81.    Clarity's file on Mr. Guerra is the direct product of that approach: it incorporates and sells information that is not merely unverified, but facially impossible – information that no reasonable data-quality procedure could have permitted to enter a consumer report.

82.    The inaccuracies in Mr. Guerra's file are not isolated transcription errors traceable to a single furnisher.

83.    They span multiple categories of the data Clarity reports – including consumer identity, date of birth, employer address, months at address, months at employer, net monthly income, pay frequency, and phone-number information – and they share a common signature: each is the kind of error that a single, elementary validity check would have caught before the data was incorporated into Mr. Guerra's file and sold to creditors.

84.    Clarity instead operates a system designed to accept and resell that data as if it were genuine.

85.    Clarity is not unaware that this is occurring. Clarity has been the subject of repeated FCRA litigation arising from the same categories of inaccuracy described in this complaint – multiple or facially impossible dates of birth on a single consumer's file, contradictory residential and employment

histories, the wholesale incorporation of placeholder or impossible data, and the incorporation of facially improbable or commingled identifying information.

86. Despite this notice, Clarity has continued to operate its systems in materially the same way, without implementing the basic validity checks that would have prevented the errors complained of here.

87. Clarity's decision to forgo the quality controls used by its parent company and by other major consumer reporting agencies, in the face of repeated notice that this decision causes ongoing harm to consumers, constitutes a reckless disregard for the rights of the consumers whose data it sells, including those of Mr. Guerra.

## Damages Suffered by Mr. Guerra

88. As a direct and proximate result of Clarity's inaccurate reporting, Mr. Guerra applied for credit and was either denied outright or offered credit on materially less favorable terms than he would have received had Clarity's file accurately reflected his true creditworthiness.

89. Mr. Guerra has also suffered damages including wasted time trying to figure out what the information in his Clarity file means and how it got there, significant emotional distress and aggravation, and damage to his reputation.

90. As of the date of this filing, Clarity continues to include the aforementioned false information in Mr. Guerra's credit file. As such, Mr. Guerra

demands that Clarity conduct an investigation upon service of this lawsuit and correct his file within 30 days.

91.    Mr. Guerra has hired the undersigned law firm to represent him in this matter and has assigned the firm his right to fees and costs.

## COUNT I
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

92.    Mr. Guerra adopts and incorporates paragraphs 1 - 91 as if fully stated herein.

93.    Clarity willfully violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Mr. Guerra, as Clarity sold consumer reports containing information belonging to another consumer and containing erroneous information about his consumer identity, date of birth, employer address, months at address, months at employer, net monthly income, pay frequency, phone-number information, and more.

94.    Clarity has been sued on numerous occasions for very similar situations and knows that it frequently sells reports with erroneous information about consumers.

95.    Clarity's conduct was thus willful or done with a reckless disregard for Mr. Guerra's rights under the FCRA.

96.    As a result of its conduct, Clarity is liable to Mr. Guerra for the

greater of Mr. Guerra's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Mr. Guerra respectfully requests this Honorable Court enter judgment against Clarity for:

a.  The greater of Mr. Guerra's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.  Such other relief that this Court deems just and proper.

## COUNT II
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)
### (Pled in the Alternative to Count I)

97.  Mr. Guerra adopts and incorporates paragraphs 1 - 91 as if fully stated herein, and pleads this count strictly in the alternative.

98.  Clarity owed Mr. Guerra a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Mr. Guerra.

99.  Clarity breached this duty when it sold consumer reports containing information belonging to another consumer and containing erroneous

information about his consumer identity, date of birth, employer address, months at address, months at employer, net monthly income, pay frequency, phone-number information, and more.

100. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681e(b), and Mr. Guerra is entitled to his actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Mr. Guerra respectfully requests this Honorable Court enter judgment against Clarity for:

a. Actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

**COUNT III**
**WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)**

101. Mr. Guerra adopts and incorporates paragraphs 1 - 91 as if fully stated herein.

102. Clarity violated 15 U.S.C. § 1681b(a)(3) when it furnished two consumer reports regarding Mr. Guerra to CNU Online Holdings and Green Arrow Solutions in response to credit applications submitted in the name of "Taryn Lowery" – applications that concerned a different, unrelated individual and not Mr. Guerra.

103.   Clarity had no reason to believe it had a permissible purpose to furnish reports regarding Mr. Guerra.

104.   Clarity knows, through complaints from other consumers, that its automated systems often provide data about unrelated consumers in response to requests for reports by lenders.

105.   Clarity's conduct was willful, intentional, and/or exhibited a reckless disregard for its duties under the FCRA.

WHEREFORE, Mr. Guerra respectfully requests this Honorable Court enter judgment against Clarity for:

a.    The greater of Mr. Guerra's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT IV
## NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)
### (Pled in the Alternative to Count III)

106.   Mr. Guerra adopts and incorporates paragraphs 1 - 91 as if fully stated herein, and pleads this count strictly in the alternative.

107.  Clarity had a legal duty to Mr. Guerra to only sell consumer reports to those persons with a permissible purpose to obtain the reports.

108.  Clarity breached this duty when it furnished two consumer reports regarding Mr. Guerra to CNU Online Holdings and Green Arrow Solutions in response to requests concerning a different, unrelated individual, and thus without a permissible purpose as to Mr. Guerra.

109.  Clarity's breach amounts to a violation of 15 U.S.C. § 1681b(a)(3), and as such, Mr. Guerra is entitled to his actual damages, reasonable attorneys' fees, and costs.

WHEREFORE, Mr. Guerra respectfully requests this Honorable Court enter judgment against Clarity for:

a.  Actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.  Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.


Respectfully submitted on June 25, 2026, by:

SERAPH LEGAL, P.A.

*/s/ Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar # 119168
3505 E. Frontage Rd., Ste. 145
Tampa, Florida 33607
(813) 321-2348
BGeiger@seraphlegal.com
Service@seraphlegal.com
Lead Counsel for Plaintiff